**WEILAND GOLDEN GOODRICH LLP**
Jeffrey I. Golden, State Bar No. 133040
jgolden@wgllp.com
Ryan W. Beall, State Bar No. 313774
rbeall@wgllp.com
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Telephone 714-966-1000
Facsimile 714-966-1002

Attorneys for Chapter 7 Trustee
David M. Goodrich

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>NICHOLAS ANDREW COLACHIS,<br><br>Debtor. | Case No. 2:18-bk-18534-NB<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF NEIMAN REALTY AS REAL ESTATE BROKER TO MARKET AND SELL PROPERTY AT 8896 LOOKOUT MOUNTAIN AVENUE, LOS ANGELES, CALIFORNIA 90046 [APN 5563-026-019]; DECLARATIONS OF DAVID M. GOODRICH AND JAN NEIMAN IN SUPPORT THEREOF**<br><br>[No Hearing Required Pursuant to LBR 2014-1(b)] |

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE; THE DEBTOR AND DEBTOR'S COUNSEL, IF ANY; AND PARTIES IN INTEREST;**

David M. Goodrich, the duly appointed, qualified and acting Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Nicholas Andrew Colachis ("Debtor"), requests authority to employ Neiman Realty, Inc. ("Broker") to act as the Estate's real estate broker in this case for the purpose of marketing and selling real property located at

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

8896 Lookout Mountain Avenue, Los Angeles, California 90046, APN: 5563-026-019 ("Property").

This application is brought in accordance with 11 U.S.C. §§ 327(a) and 328(a), Federal Rule of Bankruptcy Procedure 2014, and Local Bankruptcy Rule 2014-1(b), and is made on the ground that the Broker does not hold or represent an interest adverse to the Estate and the Broker is disinterested as required by § 327(a).

The resume of Jan Neiman ("Ms. Neiman"), the agent for the broker who will be primarily responsible for marketing the Property for sale, is attached hereto as **Exhibit 1**. The Trustee seeks to employ the Broker on the terms and conditions stated in the Residential Listing Agreement and Addendum (collectively "Listing Agreement") attached hereto as **Exhibit 2**.

This Application is based on the attached Memorandum of Points and Authorities, the Declarations of David M. Goodrich and Jan Neiman, and exhibits.

Wherefore, the Trustee respectfully requests that the Court enter an order:

1. Authorizing the Trustee to employ the Broker as the Estate's real estate broker, on the terms and conditions set forth in this Application pursuant to the Listing Agreement, including but not limited to, those terms relating to compensation for the Broker, under the standards set forth in 11 U.S.C. §§ 327(a) and 328(a) at the expense of the Estate, without the necessity of a separate fee application; and

2. Granting such relief as the Court deems just and proper.

Dated: January 17, 2019

WEILAND GOLDEN GOODRICH LLP

By: */s/ Ryan W. Beall*
RYAN W. BEALL
Attorneys for Chapter 7 Trustee
David M. Goodrich

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

### A. Background Facts

On July 25, 2018, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. *See* Docket No. 1. Thereafter, David M. Goodrich was appointed as the chapter 7 trustee of the Estate.

The Debtor filed his schedules of assets and liabilities on July 25, 2018. *See* Docket No. 1. On October 12, 2018, Debtor amended Schedules A/B and C. *See* Docket No. 33. In his Amended Schedules A/B and original Schedule D, the Debtor lists an interest in real property located at 8896 Lookout Mountain Avenue, Los Angeles, California 90046 ("Property"), with a value of $3,300,000.00 and liens totaling $2,135,000.00. In his Amended Schedule C, Debtor lists an exemption in the amount of $175,000.00 against the Property.

U.S. Bank Trust, N.A., creditor and lien holder on the Property, filed a Motion for Relief from Stay that was granted by the Court only in part. The Court granted some relief under 11 U.S.C. § 362(d)(4) with respect to future filings, but did not lift the stay in the current case due to the large equity cushion in the Property.

The Trustee's proposed broker estimates the value of the Property to be approximately $3 million and recommends the Trustee list the Property at that price. *See* Declaration of Jan Neiman. Debtor listed U.S. Bank Trust, N.A. as holding a deed of trust against the Property in the approximate, aggregate amount of $1,500,000.00. Although U.S. Bank Trust, N.A., has not filed a proof of claim in the instant case, Debtor filed a previous bankruptcy case[1] in which U.S. Bank Trust, N.A., filed a proof of claim indicating that the amount owed on its deed of trust is $2,266,719.46. Sam C. Colachis, Jr. holds a

---

[1] Case No. 2:17-bk-20458-WB was a chapter 13 case filed by Nicholas Andrew Colachis that was dismissed on June 15, 2018. Debtor filed a motion to vacate dismissal, and after that motion was denied, Debtor appealed the denial of the motion to vacate.

deed of trust against the Property in the approximate, aggregate amount of $230,000.00. Jim Colachis/LM Ptr holds a deed of trust against the Property in the approximate, aggregate amount of $270,000.00. Victor Anthony Notolli holds a deed of trust against the Property in the approximate, aggregate amount of $135,000.00. Thus the total secured debt on the Property is approximately $2,901,719.46. *See* Declaration of David M. Goodrich. Based upon the estimated value of the Property and the known liens recorded against the Property, there is approximately $98,280.54 of equity in the Property[2].

**B. The Proposed Employment Of Broker**

The profile of Ms. Neiman, who will be primarily responsible for marketing the Property for sale, is attached (**Exhibit 1**). The Trustee seeks to employ the Broker on the terms and conditions stated in the Listing Agreement (**Exhibit 2**). The Broker has not received and will not receive a retainer in connection with the proposed retention. Pursuant to the Listing Agreement, the total commission will be six percent (6%) of the purchase price for the Property.

This Application requests only that the Court approve the Trustee's employment of the Broker under Bankruptcy Code § 327(a). This Application does not request authorization to actually sell the Property under 11 U.S.C. § 363. Upon the presentation of an acceptable purchase offer for the Property, the Trustee will file a motion seeking court authority to sell the Property and pay the total broker's commission of six percent (6%) from the sale proceeds through escrow. The Trustee's motion will contain an overbid procedure.

**II.**

**THE COURT SHOULD AUTHORIZE THE TRUSTEE TO EMPLOY THE BROKER**

**A. The Trustee May Retain The Broker Pursuant To Bankruptcy Code § 327(a)**

Bankruptcy Code §327(a) provides:

[2] Trustee may need to negotiate with U.S. Bank Trust, N.A. for a possible carve out to the Estate.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. §327(a) (2011).

Furthermore, §1107(b) provides:

> (b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

11 U.S.C. §1107(b) (2011).

Based upon the Statement of Disinterestedness attached hereto, the Trustee is satisfied that the Broker does not hold or represent an interest adverse to the Estate, and that the Broker is disinterested as required by § 327(a). Therefore, the Trustee may employ the Broker under § 327(a).

Furthermore, as set forth in the Broker resume attached hereto in **Exhibit 1**, Ms. Neiman, who will be primarily responsible for marketing the Property for sale, has experience with selling real property in the area in which the Property is located. *See* **Exhibit 1**. Additionally, the Listing Agreement provides for a total broker's commission of six percent (6%) of the sale price on the Property.

After payment of the purchase price, and the fees and costs associated with sale of the Property, the Trustee hopes to pay creditors by sale of the Property and realization of the equity therein. As such, approval of this Application, and a subsequent sale, is a critical element to a distribution to Estate creditors.

**B. <u>The Court Should Approve The Proposed Terms of Compensation Pursuant to Bankruptcy Code § 328(a)</u>**

Bankruptcy Code §328(a) provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

> case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. §328 (emphasis added).

Pursuant to § 328(a), the Trustee may employ Broker on the specific terms set forth in the Listing Agreement, including those relating to compensation, provided such terms are reasonable. *See* 11 U.S.C. § 328(a). This section "provides a specific mechanism for professional persons to obtain prior court approval of the terms of their compensation[,]" subject to possible adjustment if such compensation proves to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions. *See* 3 COLLIER ON BANKRUPTCY ¶ 328.01 (Alan N. Resnick & Henry J. Sommer Eds. 16th ed.); 11 U.S.C. § 328(a).

The Trustee believes that the terms and conditions of the Listing Agreement are reasonable, and for this reason, the Trustee requests that the compensation terms in the Listing Agreement be approved at this time, without the necessity of a separate fee application, notice or hearing. Such approval would be in the best interests of the Estate because it would allow the Estate to avoid the expenses of a fee application procedure, and because the Court would still retain authority to allow compensation different from the compensation provided under the Listing Agreement after conclusion of the employment "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a).

## III.

## CONCLUSION

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

For the foregoing reasons, the Trustee believes that the employment of the Broker at the expense of the Estate is necessary and in the best interests of Estate and its creditors. Therefore, the Trustee respectfully requests that the Court enter an order:

1. Authorizing the Trustee to employ the Broker as his real estate broker on the terms and conditions stated herein and in the Listing Agreement, and under the standards set forth in 11 U.S.C. §§ 327(a) and 328(a) at the expense of the Estate, without the necessity of a separate fee application; and

2. Granting such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: January 17, 2019

WEILAND GOLDEN GOODRICH LLP

By: */s/ Ryan W. Beall*
RYAN W. BEALL
Attorneys for Chapter 7 Trustee
David M. Goodrich

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**DECLARATION OF DAVID M. GOODRICH**[3]

I, David M. Goodrich, declare as follows:

1. I am the duly appointed Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Nicholas Andrew Colachis ("Debtor"). I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of the *Application for Order Authorizing Employment of Neiman Realty as Real Estate Broker to Market and Sell Real Property at 8896 Lookout Mountain Avenue, Los Angeles, California 90046 [APN 5563-026-019]* ("Application").

2. I intend the sell the Estate's interest in the Property upon further court order to pay claims of creditors and expenses of administration, and seek the Court's authorization to employ the Broker to advertise the Property, to market and show the Property, to represent the Estate in connection with the sale of the Property, and to advise me with respect to obtaining the best offer for the sale of the Property.

3. It is my understanding that there are several liens on the property: (1) U.S. Bank Trust, N.A., holds a deed of trust against the Property in the approximate, aggregate amount of $2,266,719.46, (2) Sam C. Colachis, Jr. holds a deed of trust against the Property in the approximate, aggregate amount of $230,000.00; (3) Jim Colachis/LM Ptr holds a deed of trust against the Property in the approximate, aggregate amount of $270,000.00; and (4) Victor Anthony Notolli holds a deed of trust against the Property in the approximate, aggregate amount of $135,000.00.

4. Based upon the estimated value of the Property and the known liens recorded against the Property, there appears to be approximately $98,280.54 of equity in the Property.

---

[3] All capitalized terms have the same meaning or definition as the capitalized terms in the Application.

5. A true and correct copy of the resume of Jan Neiman, the Broker who will be the primarily responsible for the marketing the Property sale, is attached as Exhibit 1. A true and correct copy of the proposed Listing Agreement, with Addendum, is attached hereto as Exhibit 2.

6. The Broker has not received and will not receive a retainer in connection with the proposed retention. Pursuant to the Listing Agreement and as is consistent with the industry standard, the Broker will seek approval of compensation in the amount of 6% of the sale price for the Property.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17th day of January, 2019, at Costa Mesa, California.

David M. Goodrich

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**DECLARATION OF JAN NEIMAN[4]**

I, Jan Neiman, declare:

1. I am a real estate agent licensed in the State of California. I know each of the following facts to be true of my own personal knowledge or information and belief and, if called as a witness, I could and would competently testify with respect thereto. I am the principal of Neiman Realty, located at 14205 Collins Street, Sherman Oaks, California 91401. I make this declaration in support of the *Application for Order Authorizing Employment of Neiman Realty as Real Estate Broker to Market and Sell Real Property at 8896 Lookout Mountain Avenue, Los Angeles, California 90046 [APN 5563-026-019]* ("Application").

2. The Broker and I are qualified to represent the Trustee and the Estate in connection with the marketing and sale of the Estate's interest in the Property. A true and correct copy of the Listing Agreement is attached as Exhibit 1. A true and correct copy of my profile is attached as Exhibit 2.

3. On behalf of the Broker, I have agreed to accept employment on the terms and conditions set forth in the Application. The total commission for the Property is six percent (6%). The commission will be shared with the buyer's broker and will be paid from the sale proceeds through escrow.

4. I estimate the value of the Property to be approximately $3 million, and recommend that the Trustee list the Property at $3,000,000.00.

5. To the best of my knowledge, the Broker and I:

a. have no connection with the Debtor, the Debtor's principals, insiders, creditors, the Trustee, any other party or parties in interest, their respective attorneys and accountants, or any person employed in the Office of the United States Trustee;

[4] All capitalized terms have the same meaning or definition as the capitalized terms in the Application.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

attorneys and accountants, or any person employed in the Office of the United States Trustee;

b. are not creditors, equity security holders or insiders of the Debtor;

c. are not investment bankers for any outstanding security of the Debtor;

d. have not been, within three (3) years before the date of the filing of the petition herein, investment bankers for a security of the Debtor, or attorneys for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor;

e. are not and were not, within two (2) years before the date of the filing of the petition herein, directors, officers or employees of the Debtor or of any investment banker for any security of the Debtor;

f. do not represent an individual or entity which holds an interest adverse to the Estate;

g. are not related to the United States Trustee or to a bankruptcy judge in the Central District of California;

h. are disinterested within the meaning of 11 U.S.C. §§ 327(a) 101(14);

i. have no fee sharing arrangement, understanding or compensation sharing arrangement with any other entity, except for the customary division of the commission from the sale of a property between the listing broker and the selling broker, as provided in the Listing Agreement; and

j. will not receive a retainer in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15 day of January, 2019, at Sherman Oaks, California.

Jan Neiman

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

# EXHIBIT 1

Resume of Jan Neiman
14205 Collins Street, Sherman Oaks, CA 91401
Office: (818) 516-3779 Fax: (818) 785-5925

# Jan Neiman

**Career Summary**

Real Estate Broker specializing in Selling of Commercial, Industrial, and Residential properties; Market Analysis, Marketing, Sales and Leasing of all aspects of Properties.

**Professional Experience**

**Real Estate Broker,** 1994 – Present
*Neiman Realty, Inc., Sherman Oaks, California.*
Specializing in liquidation of properties for Bankruptcy Trustees and Probate Estates, and standard selling and listing of homes. Our focus includes marketing and sales of commercial, industrial, residential properties: interfacing with the Courts, Escrow/Title Companies. Other related responsibilities. We specialize in working with tenants and owners in difficult situations. We work with professional Short Sale Experts, in closing escrows. Neiman Realty maintains a professional crew of plumbers, electricians, trash abatement and disposal services. We associate with licensed general contractors to make minor to major and restorations. Neiman Realty offers experience in taking any transaction from acquisition and eviction through repair and maintenance. Representing Sellers and Buyers in all aspects of Real Estate.

**Field Agent for Bankruptcy Trustees,** 1995 – 2005
*Responsibilities include: taking over business who enter into Bankruptcy, handling the liquidation of assets (business and personal), selecting and hiring auctioneers for asset sale; act as liaison between Trustee and Auctioneer, negotiate termination agreements between debtor and landlord; take-over and manage debtor business books and records, divert mail, close bank accounts and oversee auction of inventory.*

**General Manager of Property Management and Administration,** 1981 – 1995
*California Real Estate Services Inc. (a division of Neiman Realty)*
Responsibilities included negotiating and supervising the service contracts; administrating the office procedures for the accounting and property management departments; reporting profit and loss operations, and managing approximately 250 units. Also, was an active participant in the residential and commercial re-development in Huntington Park, from the planning stage through selling the completed projects.

**Sales Associate 1977 – 1985,** President 1990 – 1992
*Neiman Realty, Sherman Oaks, California*
Responsibilities included: Managing the day-to-day operations of the brokerage and property management division; in charge of all commercial, office, and industrial sales of the corporation; interacting with developers interested in purchasing or leasing office buildings; assisting in the relocation of businesses and commercial tenants; obtaining new listing and leasing agreements; and supervising all advertisement and promotions. Additional responsibilities included holding the position of Realtor-Associate and Marketing Coordinator in charge of preparing loan packages for submission to Lenders for land acquisition, appraisals, new tract sales, and resales.

**Education and Licenses**
Graduated Grant High School, Van Nuys, California 1971
Licenses as a Real Estate Sales Associate in 1977
Licensed as a Real Estate Broker in 1983

# EXHIBIT 2



CALIFORNIA
ASSOCIATION
OF REALTORS®

# DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP

(Seller's Brokerage Firm to Seller)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/18)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:

(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
(b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant [signature] Date 1/14/19
*David Goodrich, Chapter 7, Trustee*

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant ______ Date ______

Agent *Neiman Realty* DRE Lic. # *00786172*
Real Estate Broker (Firm)

By [signature] DRE Lic. # *00680498* Date 1-14-19
(Salesperson or Broker-Associate, if any) *Jan Neiman*

© 1991-2018, California Association of REALTORS®, Inc.

Neiman Realty 14205 Collins St Sherman Oaks, CA 91401 Phone: (818)516-3779 Fax: (818)785-5925 8896 Outlook M
Jan Neiman Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

## CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13.** As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

CONFIRMATION: The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm DO NOT COMPLETE. SAMPLE ONLY ____ License Number ____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent DO NOT COMPLETE. SAMPLE ONLY ____ License Number ____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm DO NOT COMPLETE. SAMPLE ONLY ____ License Number ____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent DO NOT COMPLETE. SAMPLE ONLY ____ License Number ____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18** (Repealed pursuant to AB-1289)

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



CALIFORNIA
ASSOCIATION
OF REALTORS®

# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT

(C.A.R. Form PRBS, Revised 12/18)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller [signature] *David Goodrich, Chapter 7, Trustee* Date 1/14/19
Seller ______ Date ______

Buyer ______ Date ______
Buyer ______ Date ______

Buyer's Brokerage Firm ______ DRE Lic # ______ Date ______
By ______ DRE Lic # ______ Date ______

Seller's Brokerage Firm *Neiman Realty* DRE Lic # *00786172* Date 1-14-19
By [signature] DRE Lic # *00680498* Date 1-14-19
*Jan Neiman*

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Neiman Realty 14205 Collins St Sherman Oaks, CA 91401 Phone: (818)516-3779 Fax: (818)785-5925 8896 Outlook M
Jan Neiman Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com



CALIFORNIA
ASSOCIATION
OF REALTORS®

# WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY

(C.A.R. Form WFA, Revised 12/17)

Property Address: *8896 Lookout Mountain Avenue, Los Angeles, CA 90046* ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

**ACCORDINGLY, YOU ARE ADVISED:**

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

Buyer/Tenant ______ Date ______

Buyer/Tenant ______ Date ______

Seller/Landlord X [signature] *David Goodrich, Chapter 7, Trustee* Date 1/14/19

Seller/Landlord ______ Date ______

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Neiman Realty 14205 Collins St Sherman Oaks, CA 91401 Phone: (818)516-3779 Fax: (818)785-5925 8896 Outlook M
Jan Neiman Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

CALIFORNIA ASSOCIATION OF REALTORS®

# RESIDENTIAL LISTING AGREEMENT
**(Exclusive Authorization and Right to Sell)**
**(C.A.R. Form RLA, Revised 12/18)**

Date Prepared: *01/14/2019*

1. **EXCLUSIVE RIGHT TO SELL:** *David Goodrich, Chapter 7, Trustee* ("Seller") hereby employs and grants *Neiman Realty* ("Broker") beginning (date) *January 14, 2019* and ending at 11:59 P.M. on (date) *December 31, 2019* ("Listing Period") the exclusive and irrevocable right to sell or exchange the real property described as *8896 Lookout Mountain Avenue* , situated in *Los Angeles* (City), *Los Angeles* (County), California, *90046* (Zip Code), Assessor's Parcel No. ______ ("Property").
   - ☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
   - ☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.
2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: *Three Million* Dollars ($ *3,000,000.00* ).
   B. Listing Terms: *See Addendum*
3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☐ *6.000* percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ ______ , AND ______ , as follows:
   (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   OR (2) If within ______ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: ______ .
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
   (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☐ *3.000* percent of the purchase price, or ☐ $ ______ .
   (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: ______ .
   (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: ______ .
   (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2018, California Association of REALTORS®, Inc.
Seller's Initials X( [signature] ) ( )

Neiman Realty 14205 Collins St Sherman Oaks, CA 91401 Phone (818)516-3779 Fax (818)785-5925 8896 Outlook M
Jan Neiman Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Property Address: *8896 Lookout Mountain Avenue, Los Angeles, CA 90046* Date: *01/14/2019*

4. A. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
**ADDITIONAL ITEMS EXCLUDED:** ______________________.
**ADDITIONAL ITEMS INCLUDED:** ______________________.
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

B. **(1) Leased Or Not Owned Items:** The following items are leased or not owned by Seller:
☐ Solar power system ☐ Alarm system ☐ Propane tank ☐ Water Softener
☐ Other ______________________
**(2) Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system ☐ Windows or doors ☐ Heating/Ventilation/Air conditioning system
☐ Other ______________________
Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

5. **MULTIPLE LISTING SERVICE:**

A. Broker is a participant/subscriber to *SRAR* Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

**Seller's Initials** ( [initials] )( ) **Broker's/Agent's Initials** ( [initials] )( )

Seller's Initials X( [initials] ) ( )

B. MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

C. MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:
**(1) Property Availability On The MLS; Address On the MLS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet. Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.
**(2) Feature Opt-Outs:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.
**(a) Comments And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.
**(b) Automated Estimate Of Value:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

6. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

7. **BROKER'S AND SELLER'S DUTIES:**
A. Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.
B. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.
C. Investigations and Reports: Seller agrees, within 5 (or___) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control ☐ General Property Inspection ☐ Homeowners Association Documents ☐ Other ____________.
D. Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

8. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

9. **AGENCY RELATIONSHIPS:**
A. **Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
B. **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.
C. **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

Seller's Initials X( ) ( )

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

D. **Confirmation:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

E. **Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a X "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

10. **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

11. **PHOTOGRAPHS AND INTERNET ADVERTISING:**

A. In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.

B. Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

12. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

13. **SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

14. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

15. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

16. **ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
☐ Trust Advisory (C.A.R. Form TA)
☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5** Days After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. **DISPUTE RESOLUTION:**

A. **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **Exclusions from this mediation agreement are specified in paragraph 19B.**

Seller's Initials X( ) ( )

Property Address: *8896 Lookout Mountain Avenue, Los Angeles, CA 90046* Date: *01/14/2019*

B. **ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

C. **ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

21. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: ______________________________.

☐ REPRESENTATIVE CAPACITY: This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller X [signature] *David Goodrich, Chapter 7, Trustee* Date ________
*David Goodrich, Chapter 7, Trustee*
Address *650 Town Center Drive. #600* City *Costa Mesa* State *CA* Zip *92626*
Telephone *(714)966-1000* Fax ________ E-mail *dgoodrich@wgllp.com*

Seller ________________________ Date ________
Address ________ City ________ State ________ Zip ________
Telephone ________ Fax ________ E-mail ________

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) *Neiman Realty* DRE Lic. # *00786172*
Address *14205 Collins St.* City *Sherman Oaks* State *CA* Zip *91401*
By [signature] *Jan Neiman* Tel. *(818)516-3779* E-mail *janneimanbroker@gmail.com* DRE Lic.# *00680498* Date 1-14-19
By ________ Tel. ________ E-mail ________ DRE Lic.# ________ Date ________

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 1991-2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com 8896 Outlook M



CALIFORNIA
ASSOCIATION
OF REALTORS®

# SELLER'S ADVISORY

(C.A.R. Form SA, Revised 12/15)

Property Address: *8896 Lookout Mountain Avenue, Los Angeles, CA 90046* ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**

   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.

   B. **Statutory Duties:** (For one-to-four Residential Units):

   (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.

   (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.

   (3) If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").

   (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.

   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that you have no disclosure duty "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."

   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**

   A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

© 1991-2015, California Association of REALTORS®, Inc.

Seller's Initials ( [signature] ) ( )

Neiman Realty 14205 Collins St Sherman Oaks, CA 91401 Phone: (818)516-3779 Fax: (818)785-5925 8896 Outlook M
Jan Neiman Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Property Address: *8896 Lookout Mountain Avenue, Los Angeles, CA 90046* Date: ______

B. **Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

C. **Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

D. **Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) Install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do no have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

E. **EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

F. **Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

4. **MARKETING CONSIDERATIONS:**

A. **Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others. By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

B. **Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

C. **Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

D. **Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

5. **OTHER ITEMS:** ______

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller [signature] Date 1/14/19
Print Name *David Goodrich, Chapter 7, Trustee*

Seller ______ Date ______
Print Name ______

Real Estate Broker (Listing Firm) *Neiman Realty* DRE Lic.#: *00786172*
By [signature] *Jan Neiman* DRE Lic.# *00680498* Date 1-14-19
By ______ DRE Lic.# ______ Date ______
Address *14205 Collins St.* City *Sherman Oaks* State *CA* Zip *91401*
Telephone *(818)516-3779* Fax *(818)785-5925* E-mail *janneimanbroker@gmail.com*

© 1991-2015, California Association of REALTORS®, Inc. Copyright claimed in Form SA, exclusive of language required by California Civil Code §1710.2. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com 8896 Outlook M

## ADDENDUM TO COMMERCIAL AND RESIDENTIAL INCOME LISTING AGREEMENT

This addendum ("Addendum") to the Residential Listing Agreement ("Agreement") is entered on January 14, 2019, by Neiman Realty ("Broker") regarding the Broker's marketing and possible sale of the property located at 8896 Lookout Mountain Avenue, Los Angeles, California, 90046 ("Property") and David M. Goodrich, as the chapter 7 trustee ("Trustee" or "Seller") of the estate of Nicholas Andrew Colachis. ("Debtor").

The Agreement is subject to the following additional terms:

1. Any and all disputes, including the Broker's Fee, which involve in any manner the Bankruptcy estate or David M. Goodrich, arising from this Agreement, this Addendum or relating in any manner to the Property, shall be resolved only in the United States Bankruptcy Court, Central District of California, Los Angeles Division.

2. Any sale of the Property is subject to the approval of the Bankruptcy Court of the Central District of California pursuant to a motion to sell property of estate to be filed by the Trustee or his counsel after the acceptance of an offer on the Property.

3. Any sale of the Property is subject to overbid pursuant to the overbid procedure which would be contained within the Trustee's motion to sell the Property.

4. Any sale of the Property is "as is", "where is" without any representations, guarantees or warranties of any kind, whether expressed or implied, being given by the Trustee.

Dated: January 15, 2019

NEIMAN REALTY.

By: ______________________
Jan Nieman, Agent

Dated: January 14, 2019

______________________
David M. Goodrich, Chapter 7 Trustee of the Estate of Nicholas A. Colachis.

Main Document Page 27 of 27

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**650 Town Center Drive, Suite 600**
**Costa Mesa, California 92626**

A true and correct copy of the foregoing document entitled (*specify*): Chapter 7 Trustee's Application for Order Authorizing Employment of Neiman Realty as Real Estate Broker to Market and Sell Property at 8896 Lookout Mountain Avenue, Los Angeles, California 90046 [APN 5563-026-019]; Declarations of David M. Goodrich and Jan Neiman in Support Thereof will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 17, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Ryan W Beall rbeall@lwgfllp.com, vrosales@wgllp.com;kadele@wgllp.com
David M Goodrich (TR) dgoodrich@wgllp.com,
c143@ecfcbis.com;dgoodrich11@ecf.epiqsystems.com;lrobles@wgllp.com
Merdaud Jafarnia bknotice@mccarthyholthus.com, mjafarnia@ecf.inforuptcy.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) January 17, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Neil W. Bason
United States Bankruptcy Court
255 E. Temple Street, Suite 1552 / Courtroom 1545
Los Angeles, CA 90012

Nicholas Andrew Colachis
8896 Lookout Mountain Avenue
Los Angeles, CA 90046-1820

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) January 17, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/17/2019 | Victoria Rosales | victoria [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**